**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STATE FARM MUTUAL | : | CIVIL ACTION |
| AUTOMOBILE INSURANCE CO., et al. | : | |
| | : | |
| v. | : | |
| | : | NO. 03-5595 |
| AMERICAN REHAB AND | : | |
| PHYSICAL THERAPY, INC., et al. | : | |

**SUPPLEMENTAL MEMORANDUM RE: PRELIMINARY INJUNCTION and MOTION**
**TO STAY**

**Baylson, J.**                                                                                          **July 14, 2009**

On June 22, 2009, this Court issued a Memorandum and Order (Doc. No. 150) granting a

preliminary injunction against Defendant Richard Privitera ("Privitera") because of his

purposeful evasion of his legal obligation to satisfy a default judgment entered against him

almost four years ago.  Although the Court's Order gave the parties fourteen days to submit

exceptions to the ruling, Privitera has elected to file an appeal to the Court of Appeals for the

Third Circuit rather than filing exceptions with this Court.

In light of Privitera's appeal, this Court writes further to elaborate on the extensive

history of Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and

Casualty Insurance Company (collectively "Plaintiffs" or "State Farm")'s obtainment of a default

judgment against Privitera and Plaintiffs' numerous post-judgment collection efforts, which have

been stymied by constant obstructive conduct by Privitera.  In addition, the Court responds to

Privitera's Motion to Stay Pending Appeal and new legal arguments raised in his accompanying

Memorandum of Law.

The Court's June 22, 2009 Order did not deal with the issue of the Plaintiffs posting a bond as a condition of obtaining a preliminary objection.  Upon taking the appeal, Privitera has also requested that a supersedeas bond be allowed for a nominal amount, asserting that he does not have sufficient funds for any substantial amount of bond.  This Memorandum and the Order following will rule on both of these issues.

## I.    Complaint and Pre-Judgment Proceedings

This case began October 7, 2003, when Plaintiffs filed a civil action against Defendants American Rehab and Physical Therapy Inc. ("American Rehab"), Richard Privitera, Dean Parker, and Steve Moldover (Doc. No. 1).  Defendants Privitera, Parker, and Moldover were shareholders, directors, officers, and employees of American Rehab at all times relevant to this action.  (Compl. ¶¶ 3-5; Ans. ¶¶ 3-5.)  Plaintiffs alleged violations of the corporate practice of medicine doctrine, Pennsylvania Insurance Fraud Statute, and various common law causes of action based on Defendants' scheme to defraud Plaintiffs by performing unnecessary testing and consults and producing fraudulent reports and billing in order to obtain payment from Plaintiffs. (Compl. ¶¶ 10, 11.)  In addition, Plaintiffs alleged that the individual Defendants were practicing medicine without a license.  (Compl. ¶ 17.)  Defendants answered the Complaint (Doc. No. 9) and subsequently filed a Motion for Judgment on the Pleadings (Doc. No. 15).

On April 30, 2004, the case was placed in suspense due to the bankruptcy filing of Defendant American Rehab (Doc. No. 20).  On May 25, 2005, following Plaintiffs' filing of an unopposed Motion to Sever Defendant American Rehab, the Court granted Plaintiffs' Motion, severed Defendant American Rehab, and transferred the case back to the Court's current docket to proceed against the individual Defendants (Doc. No. 22).  On July 8, 2005, Plaintiffs filed a

Motion for Partial Summary Judgment (Doc. No. 29), arguing collateral estoppel based on a jury

verdict against American Rehab and the individual Defendants in a suit by another insurance

company, Allstate Insurance Co., et al. v. American Rehab and Physical Therapy, Inc., et al.,

2001-cv-5076.  This Court denied the Motion for Partial Summary Judgment without prejudice

on August 24, 2005 (Doc. No. 58).

Plaintiffs filed numerous discovery requests and motions after the case was taken out of

suspense, and subsequently, Plaintiffs filed Motions for Sanctions against the individual

Defendants for failing to participate in any discovery in this case (Doc. Nos. 66, 67, 68, 70).  On

October 19, 2005, following a hearing on the Motions for Sanctions, this Court entered Default

Judgments against all remaining Defendants—Privitera, Parker, and Moldover—under counts of

fraud, statutory insurance fraud, unjust enrichment, and restitution (Doc. No. 75).  Each

Defendant was assessed a judgment of $500,000.  Defendants Parker and Moldover attended the

hearing, but Defendant Privitera did not attend.  Counsel for Defendants Parker and Moldover,

who were present, did not object to the entry of the default judgments, and no appeal was taken.

## II.     Post-Judgment Proceedings

Since the entry of the default judgments, Plaintiffs have engaged in extensive discovery in

aid of the execution of the default judgment pursuant to Federal Rule of Civil Procedure 69(a)(2).

On December 3, 2007, Plaintiffs filed a Motion to Compel Privitera's Deposition (Doc. No. 78),

which this Court granted (Doc. No. 80).  Plaintiffs deposed Privitera on January 15, 2008.  On

July 2, 2008, Plaintiffs filed a Motion to Compel against Privitera for an order requiring him to

identify the holding company to whom he pays rent (Doc. No. 84), which this Court granted on

July 17, 2008 (Doc. No. 86).  Privitera refused to comply with the Court's Order to identify the

holding company to whom he pays rent, and on that basis, Plaintiffs filed a Motion to Compel a

Bench Warrant for the Arrest of Privitera on September 8, 2008 (Doc. No. 87).  In addition,

throughout 2008 and 2009, Plaintiffs filed various writs of execution against Defendant Privitera

and garnishee banks and other companies (Doc. Nos. 82, 90, 91, 105, 108, 122, 128, 134, 144,

153).

     The Court held a hearing on November 24, 2008 on Plaintiffs's Motion to Compel

Subpoenaed Documents from Comcast (Doc. No. 85) and the Motion to Compel a Bench

Warrant, which Privitera was required to attend.  Following the hearing, on November 26, 2008,

the Court ordered Privitera to provide Plaintiffs' counsel with a true and correct personal

financial statement subject to penalties against perjury and to appear at a deposition to answer

any and all questions relating to his financial status, transactions, etc (Doc. No. 99).  On

December 11, 2008, following a telephone status conference on December 8, 2008 and in view

of its November 26 Order, this Court denied without prejudice Plaintiffs's Motion to Compel a

Bench Warrant for the Arrest of Privitera and denied as moot Plaintiffs's Motion to Compel

Documents from Comcast (Doc. No. 102).

     On January 12, 2009, Privitera filed for Chapter 7 bankruptcy (Doc. No. 115), following

which Privitera's attorney cancelled the deposition scheduled pursuant to the Court's November

26, 2008 Order.  (See Pl.'s Mot. Inj. Ex. C.)  However, the bankruptcy court dismissed

Privitera's bankruptcy case on February 17, 2009, due to Privitera's failure to file the necessary

documents.  (See Pl.'s Mot. Inj. Ex. D.)  This set of circumstances raised a strong inference that

Privitera had filed for bankruptcy as a strategic ploy to delay or evade Plaintiffs' post-judgment

execution efforts.  The evidence subsequently introduced (summarized in the Court's June 22,

2009 Memorandum) shows that Privitera was not bankrupt, in any sense of the word, but rather enjoyed a comfortable lifestyle.

Plaintiffs then deposed Privitera on May 7, 2009.  (See Pl.'s Mot. Inj. Ex. E.)  Despite the prior Court Orders requiring Privitera to respond to Plaintiffs' post-execution discovery, Privitera was repeatedly non-responsive during the deposition, even in the absence of any objection of privilege or otherwise by his attorney.  (Pl.'s Mot. Inj. ¶¶ 16-32.)  As a result, the Court ordered a resumption of the deposition in open court, which took place on June 16, 2009.

Plaintiffs filed additional motions in aid of execution against Privitera.  On April 27, 2009, Plaintiffs filed a Motion to Compel Subpeonaed Documents from Privitera's attorney, Stephen Usdin, regarding Privitera's payments to Usdin (Doc. No. 124).  On June 2, 2009, Plaintiffs filed a Motion for an Injunction against Privitera to enjoin him from transferring, conveying, assigning, spending, disposing, and/or concealing any money or property valued at $200.00 or more and to order him to appear for another deposition (Doc. No. 132).  Although Privitera had testified at his deposition to earning approximately $168,000 per year, he had not made a single payment to satisfy the default judgment.  (Pl.'s Mot. Inj. ¶¶ 3, 19.)  Further, Plaintiffs asserted that Privitera has purposefully structured his financial affairs to frustrate Plaintiffs' collection efforts by not maintaining any bank accounts and cashing all paychecks. (Pl.'s Mot. Inj. ¶¶ 30, 39.)  Plaintiffs challenged several listed expenses on Privitera's financial statement as excessive and potentially unrealistic.  (Pl.'s Mot. Injunct. ¶¶ 34-39.)

The Court held a hearing on June 10, 2009, in consideration of these and other motions, including a motion by Mr. Usdin to withdraw as Privitera's attorney due to non-payment (Doc. No. 127).  On June 11, 2009, the Court granted Mr. Usdin's Motion to Withdraw as Privitera's

Counsel (Doc. No. 139) and also the Motion to Compel Subpoenaed Documents from Mr. Usdin,

Privitera's former counsel (Doc. No. 141).  On that same day, the Court also granted a

Temporary Restraining Order enjoining Privitera from transferring, conveying, assigning,

spending, disposing, and/or concealing any money and/or property valued at $200.00 or more

(Doc. No. 142).  The Court's TRO Order scheduled a further hearing on Plaintiffs's Motion for

Injunction for June 16, 2009, and for Privitera to appear for a continuation of his deposition.

Privitera's new counsel, Barry Krengel, filed a response to Plaintiffs's Motion for Injunction on

June 12, 2009 (Doc. No. 138).

At the Court's June 16 hearing, Privitera appeared with his new counsel.  With the

Undersigned initially presiding, Plaintiffs deposed Privitera in the courtroom regarding his

financial assets, and Privitera at last responded satisfactorily to the questions posed.  The

evidence showed that there was no question that Privitera had a profitable and remunerative

consulting business, as he identified his clients and how much income he had been receiving

from them.  (Doc. No. 148, Hr'g Audio 07:50-09:15, 11:00-12:00, June 16, 2009.)  Privitera

changed his status from an independent contractor consultant to an employee for at least two of

his clients (id. at 21:00-21:40), which the Court infers was done for the purpose of attempting to

evade payments to Plaintiffs.  Privitera testified that he does not have a bank account, but on

occasion when he needs to pay for something by check including to pay over $10,000 to the

Internal Revenue Service, he pays his twenty-one-year-old son and his son writes the check from

the son's personal account (id. at 01:20-02:50, 04:00-04:30, 47:00-47:50), which this Court also

inferred to be a means of avoiding payment of the default judgment.  The Court rejected

Privitera's claim that the Court was powerless to order Privitera to pay any portion of his income

to Plaintiffs because of the Pennsylvania statute prohibiting garnishment of wages, which is discussed below.

Following the deposition, the Court heard argument related to the Plaintiffs's Motion for Injunction.  At the close of the hearing, the Court instructed the parties to send ex parte letters to chambers regarding the monthly payment Privitera could afford to make towards satisfying his judgment while maintaining an adequate standard of living.

Following receipt of the parties' letters (Doc. No.158) and after careful consideration of Privitera's financial statement and deposition testimony, the Court issued its Order dated June 22, 2009 (Doc. No. 150).  The Court found that Privitera had substantial income but had structured his financial arrangements as to own no assets to evade any payment on his over three-and-one-half-year-old $500,000 default judgment.  Based on the listed income and expenses in Privitera's previously provided financial statement and his June 16 in-court deposition testimony, the Court determined that Privitera could pay $3,700 per month to Plaintiffs, while still supporting his family comfortably.[1]  The Court allowed the parties fourteen days to submit exceptions to its ruling and additional legal argument.  Instead of submitting such exceptions,

---

[1]In calculating the amount to be paid, the Court relied on Privitera's own financial statement of his monthly expenses totaling $9,110 (Pl.'s Mot. Inj. Ex. H), disallowing amounts for unnecessary social expenses ($1,200 for recreation and $1,200 of the $1,700 listed for food), but accepting reasonable amounts for shelter ($2,800), food ($500), and other expenses for him and his wife.  Privitera's reported income figures were somewhat conflicting, ranging from a 2008 annual income of $207,000 (June 16, 2009 deposition and 2008 tax return), monthly after-tax income of $10,600 (December 8, 2008 financial statement), monthly pre-tax income of about $14,696 (May 7, 2009 deposition), and monthly after-tax income of $8,500 (June 16, 2009 hearing).  Crediting the median figure, the Court estimated Privitera's after-tax monthly income as $10,500.  Based on this income and his reasonable monthly expenses of $6,710, the Court found that Privitera can and should pay $3,700 per month towards his judgment. The Court refused to allow a deduction for Privitera's claimed future expense of his son's college education because Plaintiffs' judgment deserves a higher priority as to Privitera's assets and income.

Defendant Privitera appealed the Court's Preliminary Injunction Order to the Third Circuit (Doc.

No. 155).[2]  Privitera then filed a Motion to Stay this Court's Injunction Order (Doc. No. 156).

### III.    Summary of Evidence Meeting the Standards for Injunction

In the June 22, 2009 Memorandum and Order, the Court summarized the standards for

the issuance of an injunction, but did not specifically relate the evidence to those standards.  The

history of the case shows that Plaintiffs have proven a reasonable probability of success on the

merits.  Privitera has substantial income but has structured his financial arrangements to spend all

of his income so that he owns no assets. Although he earns a substantial income, Privitera refuses

to make any payments to Plaintiffs in satisfaction of the judgment.  He enjoys a comfortable

lifestyle without regard to the fact that he has a half million dollar judgment outstanding.

In addition, the Court concludes that Plaintiffs would be irreparably injured if it denies

relief.  Plaintiffs have no other means to secure satisfaction of their judgment except by pursuing

additional post-judgment discovery and motion practice, which already has taken a great deal of

this Court's time and which Privitera has opposed and obstructed at every turn.  The Court finds

that Privitera will not suffer additional harm from the Order because he has owed State Farm

$500,000 since 2005, and, despite his income, he has not paid one cent towards satisfying the

judgment.  The Court also finds that satisfaction of judgments is in the public interest and

obstructive behavior, such as that conducted by Privitera, is detrimental to the rule of law.

---

[2]In addition to numerous post-judgment proceedings involving Defendant Privitera, Plaintiffs have filed Motions to Compel in aid of discovery and writs of execution as to Defendant Moldover's assets (Doc. Nos. 92, 113, 125).  This Court granted the Motions to Compel in part (Doc. Nos. 96, 111, 121, 140).

**IV.      Surety for the Injunction and for the Stay of Appeal**

The Court omitted requiring State Farm to enter any bond for the issuance of the

preliminary injunction in view of the overwhelming evidence and law in favor of Plaintiffs.

However, on further consideration, the Court will require State Farm to enter surety in the

amount of One Thousand Dollars ($1,000.00) to cover Privitera's costs of filing and preparing

the record and briefs in the event that the appellate court finds the preliminary injunction was

incorrectly issued.

Privitera has requested a stay of the preliminary injunction pending the appeal and has

asserted that he has insufficient funds to pay for a surety bond.  In view of the findings in the

June 22, 2009 Order and above, the Court rejects Privitera's claim of poverty.  Assuming the

appeal will take nine months, since Privitera owes State Farm $3,700 per month under the terms

of the preliminary injunction, a surety bond in the amount of $33,300.00 will be required.

**V.       Legal Grounds for Court's Order**

Defendant raised additional legal arguments in his Motion for Stay Pending Appeal and

accompanying Memorandum, which this Court will now address.  Under Federal Rule 69,

procedure on execution, including proceedings in aid of judgment or execution "must accord to

the procedure of the state where the court is located. . . ."  Fed. R. Civ. P. 69.  Under

Pennsylvania Rule 3118(a), which accords supplementary relief in aid of execution:

> (a)  On petition of the plaintiff, after notice and hearing, the court in which a
> judgment has been entered may, before or after the issuance of a writ of execution,
> enter an order against any party or person
>
> (1) enjoining the negotiation, transfer, assignment or other disposition of
> any security, document of title, pawn ticket, instrument, mortgage, or document
> representing any property interest of the defendant subject to execution;

      (2) enjoining the transfer, removal, conveyance, assignment or other

disposition of property of the defendant subject to execution;

. . .

      (6) granting such other relief as may be deemed necessary and appropriate.

Pa. R. Civ. P. 3118.

     Defendant cites National Recovery Systems v. Pinto, 18 Pa. D. & C.3d 684 (Pa. Ct. Com.

Pl. 1981), for the proposition that a court may not order relief in aid of execution under Rule

3118 that goes beyond merely preserving the status quo.  Rule 3118 authorizes summary

proceedings in aid of execution "for the purpose of maintaining the status quo as to the

judgment-debtor's property and it may only be used for that purpose."  Greater Valley Terminal

Corp. v. Goodman, 202 A.2d 89, 94 (Pa. 1964).  The Rule gives the plaintiff supplementary relief

"'without the necessity of a full dress equity proceedings.'  The Rule thus envisions something

less than a full hearing prior to the granting of relief."  Id. at 93 (quoting the explanatory

comment to Rule 3118); see also Chadwin v. Krouse, 386 A.2d 33, 37 (Pa. Super. 1978) ("[T]he

value of proceedings in aid of execution is that they provide a speedy means for the judgment

creditor to obtain satisfaction of his judgment without resort to 'full dress equity proceedings.'")

     However National Recovery and the cases on which it relies do not apply to the instant

proceedings.  Those cases are distinguishable both in the specific relief requested, see Greater

Valley, 202 A.2d 89 (considering whether fraudulent transfers can be set aside under Rule 3118);

Chadwin, 386 A.2d 33 (considering whether an order to deliver out-of-state stock certificates was

proper under Rule 3118), National Recovery, 18 Pa. D. & C.3d 684 (considering nine different

requests for relief), but more importantly on their procedural posture.  In the instant case,

"speedy" supplementary relief under Rule 3118 was not required since the Court held a full

evidentiary hearing, at which Plaintiffs took Privitera's deposition and the Court heard argument. This hearing followed years of diligent discovery efforts by Plaintiffs and evasive tactics by Privitera, as detailed above.

Based on the evidence offered at the evidentiary hearing, this Court's Order was proper under its general equity powers.  Pursuant to such general equity powers, a court may grant an injunction "to protect a plaintiff from a dissolution of the assets from which he can satisfy his claim."  Se. Nat'l Bank of Pa. v. Spectrum Leasing Corp., 1986 WL 1240, at *2-3 (E.D. Pa. 1986).  In Southeast National Bank, Judge McGlynn specifically rejected the argument that the court's power to grant plaintiff's request for relief in aid of execution was limited to Rule 3118 and granted an injunction where the court found that the plaintiff had good faith reason to believe defendants would frustrate collection efforts and the plaintiff would suffer irreparable injury.  Id. This Court made similar findings in issuing the instant Order.

Defendant further argues that this Court's Order amounts to a de facto garnishment of his wages, which violates 42 Pa.C.S.A. § 8172.  The policy underlying Pennsylvania's statutory exemption of wages from garnishment is "to secure to the laborer the earnings of his own personal labor."  Sheryl Records, Inc. v. Pickens, 245 A.2d 454, 457 (Pa. 1968).  However the statute merely protects from attachment, execution, or other process, "wages, salaries and commissions of individuals while in the hands of the employer."  42 Pa.C.S.A. § 8172 (emphasis added).  Once such wages are paid to an employee, they become an asset of the employee, whether they are deposited into one's own bank account, used to buy a house, paid over in cash to one's relatives to write checks on one's behalf, or spent in their entirety to support an overly lavish lifestyle.  Cf. Witco Corp. v. Herzog Bros. Trucking, Inc., 863 A.2d 443, 450-51 (Pa.

2004) (finding that a judgment debtor providing a bank teller with cash and personal checks to obtain cashier's checks to pay expenses facilitated the debtor's attempts to avoid lawful garnishment of its assets).  Privitera has failed to cite any authority for the proposition that wages remain protected by Section 8172 once they are paid to an employee.  As such, this Court's Order is not a de facto garnishment.

## VI.    Conclusion

Based on Plaintiffs's extensive post-judgment discovery efforts as noted in this Supplemental Memorandum and the findings of fact made in the June 22, 2009 Order, this Court determined that Plaintiffs's Motion for Injunction should be granted.  In addition, Plaintiffs must enter a surety to cover costs of the appeal.  The Court will grant Privitera's Motion to Stay the Injunction pending appeal, provided that Privitera posts a surety bond for the amount due under the injunction assuming a nine-month appeal process.

An appropriate Order follows.

O:\Shelley\03-5595 State Farm v. Am. Rehab\Supp Memo re Prelim Injunction.wpd